IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| GREGORY CROSS,<br>AIS # 135513, | : | |
| Plaintiff, | : | |
| vs. | : | CIVIL ACTION 11-CV-260-WS-C |
| DEBORAH TONEY, *et. al.*, | : | |
| Defendant. | : | |

REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis* filed a Complaint under 42 U.S.C. § 1983.  This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on the motion for summary judgment of Defendants Toney and Johnson (docs. 17, 18) and Plaintiff's opposition thereto, (doc. 21).  For the reasons stated below, it is recommended that the motion for summary judgment of Defendants be granted and that Plaintiff's action against Defendants be dismissed with prejudice.

I. SUMMARY OF FACTUAL ALLEGATIONS

From its review of the record, the Court summarizes the parties' allegations, which are material to the issues addressed in this Report and Recommendation.  On April 26, 2011, while housed at Atmore Work Release Center in Atmore, Alabama, Plaintiff claims "Defendants were having the floor cleaned inside of the building, [and] they applied muratic [sic] acid, bleach, and a detergent [that,] when mixed [together, created] a fog so thick in the building that you could see it, smell it, tast[e] it, and feel it." (Doc. 3 at 4).  Plaintiff claims he was "[p]oisoned [b]y

[t]oxic [c]hemicals" used to clean the floors of the building. (Doc. 3 at 4). Plaintiff avers that the bottle of muriatic acid contains a warning that it is not to be mixed with any other chemical agents and that the label specifically states it should not be used "in area[s] where vapors can accumulate and concentrate[.] Use only with adequate ventilation! [I]f strong odor is noticed, or you experience dizziness, headaches, naus[sea], eye watering, 'STOP!' Avoid breathing vapor's [sic], look for skin rash of any kind!" (Doc. 1 at 1). Plaintiff alleges that by applying muriatic acid to the floors, Defendants were "reckless" with his safety and wellbeing and caused him to suffer "brain damage, leg cramps, sinus flare up[s], headache[s], [and] lung[] damage." (*Id*. at 1-2). Plaintiff claims that Defendants Toney and Johnson violated his Eighth Amendment rights by (1) failing to protect him from the harm of the muriatic acid[1] (doc. 21 at 3), and (2) denying him proper medical care following the muriatic acid incident.[2] (*Id*. at 5, 7).

Defendants claim Eleventh Amendment immunity[3] and deny Plaintiff's allegations. (Doc. 17; 18-1; 18-2). Specifically, Defendant Warden Toney denies that chemicals are mixed

---

[1] Plaintiff claims that Defendants "had a duty to inform" him of the danger of the muriatic acid. (Doc. 21 at 3). He asserts that Defendants should have posted labels or signs warning inmates of the dangers of mixing the chemicals. (*Id*.).

[2] Plaintiff's denial of medical care claim is first asserted in his Motion to Amend Complaint and affidavit filed thereafter. (Docs. 20 and 21). It appears from the record that the Court never ruled on the motion to amend complaint; therefore, the Court will discuss the constitutionality of Plaintiff's denial of medical care claim, *see infra* __.

[3] Defendants asserted both absolute and qualified immunity in their Answer. Plaintiff clarified that he was only suing each in her individual capacity. (Doc. 3 at 7). Therefore, absolute immunity is not an issue, and "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). Until recently, the Court followed the mandatory procedure of *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part, Pearson v. Callahan*, 555 U.S. 223 (2009), which required the Court to determine whether the plaintiff's allegations, if true, established a constitutional violation and, if the first step was satisfied, to determine whether the

together to clean the facility, denies that inmates are allowed in the areas while they are being cleaned, and denies using any cleaning agent other than "all-purpose powder detergent." (Doc. 18-1). Defendant Chandra Johnson states that she "made certain that all inmates were out of the inmates' bathroom, as well as, the dormitory while the floors were being cleansed;" she denies any fumes or fog in the dormitory; furthermore, she denies ever being informed by Plaintiff, or any other inmate, that medical treatment was needed. (Doc. 18-2).

## II.  PROCEDURAL ASPECTS OF THE CASE

Plaintiff filed this action on May 9, 2011. (Doc. 1). The Court converted Defendants' Answer and Special Report (docs. 17, 18) to a motion for summary judgment. (Doc. 19). On November 9, 2012, the Court held a hearing on Plaintiff's motion to amend complaint (doc. 20) and motion for summary judgment (doc. 24), but Plaintiff failed to appear despite receiving notice of the hearing (doc. 23, doc. 24). On November 20, 2012, Plaintiff filed an affidavit with the Court explaining his nonappearance due to an illness and requested another hearing. (Doc. 25). The Court scheduled and held another hearing on January 10, 2013. The Defendants' motion for summary judgment and Plaintiff's response thereto are now before the Court.

## III. SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The *Federal Rules of Civil Procedure* grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. *Federal Rule of Civil Procedure* 56(a) provides that "[t]he court shall grant summary judgment if

---

right at issue was clearly established at the time of the alleged misconduct. While that procedure is now discretionary, as opposed to mandatory, *see Pearson, id.*, the Court finds it beneficial in this case. Having found herein that Plaintiff's allegations do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), the Supreme Court held that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." However, all of the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-25.

Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *See Stabler v. Fla. Van Lines, Inc.*, No. 11-0103-WS-N, 2012 WL 32660, *5 (S.D. Ala. Jan. 6, 2012) (citing *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991)). Summary judgment is proper when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) (citations and internal quotation marks omitted). "[T]here is no issue for trial unless

there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . .  If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986) (internal citations omitted).  "After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *AGSouth Genetics, LLC v. Cunningham*, No. 09-745-C, 2011 WL 1833016, *2 (S.D. Ala. May 13, 2011).

**IV. DISCUSSION**

As discussed above, Plaintiff seeks redress pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations arising out of a chemical toxic reaction that occurred when the dormitories were being cleaned with muriatic acid while he was incarcerated at Atmore Work Release Center. (Doc. 1).  Plaintiff alleges that Defendants Toney and Johnson violated his Eighth Amendment rights by failing to protect him from the toxic fumes and failing to provide proper medical care for his injuries after he was injured. (Docs. 1, 3, 20 and 21).  Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983 (1994).

The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII.  The Eighth Amendment's proscription against cruel and unusual punishment prohibits

prison officials from exhibiting "'deliberate indifference to a substantial risk of serious harm to an inmate." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). In *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989), the Supreme Court summarized a state's constitutional responsibilities with regard to inmates:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. . . . The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs -- *e.g.*, food, clothing, shelter, medical care, and reasonable safety -- it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

*DeShaney*, 489 U.S. at 199-200 (citations omitted). In order to prevail on his Eighth Amendment claim, Plaintiff must prove three elements: "(1) a condition of confinement that inflicted unnecessary pain or suffering, *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981), (2) the defendant's 'deliberate indifference' to that condition, *Wilson v. Seiter,* 501 U.S. 294, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991), and (3) causation, *Williams v. Bennett,* 689 F.2d 1370, 1389-90 (11th Cir. 1982)." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993).

In *Sims v. Mashburn*, 25 F.3d 980, 983 (11th Cir. 1994), the court described the first two elements as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

The objective component of an Eighth Amendment claim inquires whether the alleged wrongdoing amounted to the infliction of "unnecessary pain or suffering upon the prisoner." *LaMarca*, 995 F.2d at 1535.  This standard requires that the alleged deprivation be "objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  The objective standard "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency. . ., but must be balanced against competing penological goals." *LaMarca*, 995 F.2d at 1535 (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation marks omitted)).

The subjective component of an Eighth Amendment claim generally "inquires whether the officials acted with a sufficiently culpable state of mind." *Sims*, 25 F.3d at 983-84 (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).  This component "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297).  In prison condition cases, the required state of mind for a defendant is "deliberate indifference" to an inmate's health or safety. *Id.* (citations omitted).  In defining "deliberate indifference," the Supreme Court in *Farmer* stated:

> We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837.  The court concluded that the "subjective recklessness" standard of criminal law is the test for "deliberate indifference" under the Eighth Amendment. *Id.* at 839-40.  There is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not. . . ." *Farmer*, 511 U.S. at 838.  It is not enough that a plaintiff proves that

7

the defendant should have known of the risk; conscious awareness is the key. *See, e.g., Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996). "[A]n officials's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. "'Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.'" *Hale v. Talapoosa County*, 50 F.3d 1579, 1583 (11th Cir. 1995) (quoting *Farmer*, 511 U.S. at 842). "Thus, 'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Id.* (quoting *Farmer*, 511 U.S. at 842).

Moreover, "'deliberate indifference' entails more than mere negligence.'" *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003).

> In interpreting *Farmer* and *Estelle,* this Court explained in *McElligott* that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott,* 182 F.3d at 1255; *Taylor,* 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

*Id.* Indeed, a prison official's duty under the Eighth Amendment is to ensure "reasonable safety," a standard that incorporates due regard for prison officials' "unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer*, 511 U.S. at 844-45 (citations omitted). "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Id.* Having set forth the general legal principles relevant to Plaintiff's claims, the Court now turns to the application of those legal principles to the facts before the Court.

A.     Failure to Protect.

Plaintiff asserts an Eighth Amendment claim against Defendants Toney and Johnson for failing to protect him from the hazards associated with the muriatic acid cleaning mixture. For each of the reasons discussed below, this claim fails as a matter of law.

1. <u>Respondeat Superior Liability</u>.

In his complaint, Plaintiff does not allege the Defendant Toney personally cleaned the building with a muriatic acid mixture. Instead, he bases his failure to protect claim against Defendant Toney solely on the theory of *respondeat superior*, that is, that Warden Toney, as a supervisor, is responsible for the prison staff's failure to protect Plaintiff from the muriatic acid solution. In order to state a claim upon which relief can be granted in a § 1983 action, Plaintiff must establish a causal connection between each defendant's "actions, orders, customs, policies, or breaches of statutory duty and the alleged deprivation of his constitutional rights." *Frankum v. Chapman*, 2009 WL 1118875, *3 (S.D. Ala. 2009) (citations omitted). Liability for an alleged constitutional violation cannot be established on the basis of a theory of *respondeat superior*. *See Edwards v. Alabama Dep't of Corrs.,* 81 F. Supp. 2d 1242, 1255 (M.D. Ala. 2000) ("A theory of *respondeat superior* is not sufficient to support [a] § 1983 claim. . . .").

> "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); *Gonzalez*, 325 F.3d at ----, 2003 WL 1481583, at *4 (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability). Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Gonzalez*, 325 F.3d at ----, 2003 WL 1481583, at *5; *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). The necessary causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Gonzalez*, 325 F.3d at ----, 2003 WL 1481583, at *5

9

> (quoting *Braddy v. Fla. Dept. of Labor & Employment*, 133 F.3d 797, 802 (11th Cir.1998)); *Brown*, 906 F.2d at 671. Alternatively, the causal connection may be established when a supervisor's "'custom or policy ... result[s] in deliberate indifference to constitutional rights'" or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Gonzalez*, 325 F.3d at ----, 2003 WL 1481583, at *5 (quoting *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991)); *Hartley*, 193 F.3d at 1263; *see also Post v. City of Ft. Lauderdale*, 7 F.3d 1552, 1560-61 (11th Cir. 1993). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Gonzalez*, 325 F.3d at ----, 2003 WL 1481583, at *4 (internal quotation marks and citation omitted).

*Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). In instances where supervisory liability is based on a supervisor's custom or policy, a plaintiff must show that the custom or policy was "the 'moving force [behind] the constitutional violation.'" *Pinkney v. Davis*, 952 F. Supp. 1561, 1569 (M.D. Ala. 1997) (citations omitted). "[I]t is clear that not only must there be some degree of 'fault' on the part of [defendant] in establishing the policy or tolerating the custom, but there must be a causal link between the custom or policy and the constitutional deprivation." *Id.* (citations omitted).

Assuming, *arguendo*, that the muriatic acid cleaning solution created a constitutionally infirm prison condition, Plaintiff has failed to establish, or even allege, any personal involvement, custom, or policy of Warden Toney which caused the associated constitutional violation. Plaintiff details one incident; he alleges no habitual use of muriatic acid; he alleges no custom of cleaning with a blended, toxic solution, nor does he claim that Defendant Toney knew that a toxic cleaning solution was being used and ignored the situation or condoned it. Thus, because Plaintiff's failure to protect claim against Defendant Toney is based solely on a theory of *respondeat superior* liability, it fails as a matter of law.

      2.  <u>No Eighth Amendment Violation</u>.

In addition to the foregoing, Plaintiff's failure to protect claim against Defendant Toney and Defendant Johnson fails as a matter of law for lack of evidence of the essential elements of an Eighth Amendment claim.  A prison official's duty under the Eighth Amendment is to ensure "reasonable safety." *Farmer*, 511 U.S. at 844.  "[A] prison custodian is not the guarantor of a prisoner's safety." *Purcell ex rel. Estate of Morgan v. Toombs Cnty, Ga.,* 400 F.3d 1313, 1321 (11th Cir. 2005) (citations omitted).  To succeed in proving an Eighth Amendment violation, Plaintiff must show that Defendants knew that mixing soap, bleach, and muriatic acid would form a toxic fume harmful enough to be considered infliction of "unnecessary pain or suffering upon the prisoner." *LaMarca*, 995 F.2d at 1535.

Plaintiff complains of a single incident of breathing a toxic fume formed when Defendant(s) mixed cleaning agents together.  While the Court agrees that mixing muriatic acid with other cleaning agents could potentially be dangerous, the evidence in this case does not support a finding that the risk of harm associated with the isolated incident on April 26, 2011, rises to the level of a constitutional violation.  Furthermore, Plaintiff has not proven a single injury.  He has produced no affidavits from witnesses of the fog or fumes, even though he contends that other inmates were injured during the alleged incident.  (Doc. 21 at 3).  He has not produced a copy of the warning label of the chemical agent used.  He has not even given the actual name on the bottle of the product allegedly used at the work center.  Considering all of Plaintiff's evidence in the record and taking all of his statements as true, the Court is unconvinced that this one time exposure to the cleaning solution, amounts to the infliction of "unnecessary pain or suffering," *LaMarca*, 995 F.2d at 1535, or exposed an inmate to "a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.  Without further evidence, Plaintiff has failed to establish the objective element of his Eighth Amendment claim.

Assuming, however, that Plaintiff had established the objective element of his Eighth Amendment claim, in order to satisfy the subjective element of his Eighth Amendment claim, Plaintiff must show that Defendants were deliberately indifferent to the risk of serious harm to him. To meet this element, Plaintiff must prove that Defendants actually knew that a substantial risk of serious harm existed, and they "knowingly or recklessly" declined to take action to prevent that harm. *LaMarca*, 995 F.2d at 1537. In his complaint, Plaintiff states: "By applying this muriatic acid on the floors April 26, 2011, and adding other soap, and chemicals to the acid, did indeed cause a reckless danger to my health, and well being . . . " and caused severe damage to other tangible items that were contaminated by the fumes. (Doc. 1 at 1). Contrary to Plaintiff's argument, Defendants' alleged recklessness amounts to a negligence claim; it does not "amount[] to deliberate indifference." *See Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003) ("'deliberate indifference' entails more than mere negligence.'").

Plaintiff alleges Defendants should have informed him of the potential harm of the vapors or placed signs warning of the potential danger. (Doc. 21 at 3). Plaintiff's statements that Defendants "should have known" (*id.* at 1, 4) or "must have known" (*id.* at 5) are standards in negligence and civil tort cases; they are not proof of constitutional violations under the Eighth Amendment. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. Furthermore, there is no evidence before the Court of any of the claimed damage. There are no supporting medical records, no affidavits from other inmates. There are no product labels. And, while some of this proof may be difficult for an incarcerated plaintiff to obtain, that is not the case here. Since the incident and the filing of this action, Plaintiff has been released on probation, has written the Court several times, and

12

has even personally appeared before the Court.  He has had ample time to gather support for his claim and produce it.  Still, the Court has no evidence to prove that Defendants inflicted "unnecessary pain or suffering," *LaMarca*, 995 F.2d at 1535, or exposed Plaintiff or any other inmate to "a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.   Plaintiff does not allege a history or policy of cleaning with muriatic acid and/or mixing it with other agents to clean.  He does not specify any prior or subsequent incidents where an inmate was injured while the building was being cleaned, nor is there any evidence to suggest that a substantial risk of serious harm was obvious.

As discussed above, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.  Defendants must have been "consciously aware of" of the significant risk and knowingly disregarded it. *Cottrell*, 85 F.3d at 1491.  In this case, Plaintiff has failed to establish the subjective element of his Eighth Amendment failure to protect claim against Defendants Toney and Johnson.  Therefore, the claim fails as a matter of law for this reason as well.  The Court has no evidence that Defendants exhibited deliberate indifference to a substantial risk of serious harm to Plaintiff. *Farmer*, 511 U.S. at 828.

B.    Medical Care Claim.

Plaintiff claims he did not receive proper medical care after the April 26, 2011 incident. (Doc. 21 at 5).  It is unclear from the complaint, however, who Plaintiff alleges denied him medical care.  He states that "Chandra Johnson had knowledge (that several inmates had) been injured" from inhaling the chemical fumes, *id*., and she "should have known[], when an inmate,

request proper medical attention, that request, should not have been denied." (Doc. 21 at 1). However, then he states "that Defendants . . . caused, the Plaintiff to be denied of all proper medical care, by failing to stay in the room, where vapor or toxic gases were been used." *Id*. at 4.  Plaintiff claims, "they **must have known** (are [sic] should) have knowned [sic], when defendants heard the Plaintiff request, for proper medical care, from toxic fumed [sic] (inhaled) by Plaintiff." (*Id*. at 5).  None of Plaintiff's allegations regarding his denial of medical care are directly stated against either Defendant Toney or Defendant Johnson.  It is obvious from the complaint that Plaintiff is alleging denial of medical treatment; however, it is unclear when he requested medical care, from whom did he requested medical care, and who allegedly denied him medical care.  "[S]ection 1983 'requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation.'" LaMarca, 995 F.2d at 1538 (citations and internal quotation marks omitted). Because there is no evidence, nor even a specific allegation, of a causal link between these Defendants and Plaintiff's Eighth Amendment medical care claim, the claim fails as a matter of law.

## IV. CONCLUSION

Based on the foregoing, the Court concludes that Defendants, Warden Deborah Toney and Sergeant Chandra Johnson, are entitled to summary judgment in their favor on all claims asserted against them by Plaintiff.  Accordingly, it is recommended that Defendants' Motion for Summary Judgment be granted, that this action be dismissed with prejudice, and that judgment be entered in favor of Defendants and against Plaintiff.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this 13th day of March, 2013.

s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE

# MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

l.     **Objection**.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[4] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.     **Transcript (applicable Where Proceedings Tape Recorded)**.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[4] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  FED.R.CIV.P. 72(b)(2).